(Hamilton Co. Court of Common Pleas.)

JAMES C. WRIGHT v. THOMAS B. YOUTSEY.

---

(1). Rev. Stat., 6335, provides only for assignments made by residents of the state of Ohio.

(2). This section has no application to a deed of assignment executed in the state of Kentucky by a resident of that state, conveying land situated in Ohio.

(3). Such deed, if executed, witnessed and acknowledged in conformity with the law of Ohio, as to delivery, must be given effect as at common law.

(4). An assignment in invitum by the operation of law of one state has no extra-territorial effect.

(5). Instruments of encumbrance and mortgages of equitable interests in real estate in Ohio are subject to the provisions of Revised Statutes, 4106 and 4133.

---

JELKE, J. This cause comes on for hearing on the demurrer of C. M. Nagel, assignee, to the third defense of the answer of the German National Bank of Covington, Kentucky, to the answer and cross-petition of said Nagel, assignee, which defense is contained in the second and third paragraphs of said German National Bank's answer.

From these pleadings I gather the following: Some time prior to January 21, 1897, Thomas B. Youtsey had made some kind of a conveyance to the First National Bank of Newport, Kentucky, the exact nature of which I am not in-

formed. On January 21, 1897, Thomas B. Youtsey, at Newport, Campbell county, Kentucky (in which county C. M. Nagel and Youtsey both resided), executed and delivered to said Nagel a certain deed of assignment, signed by the said Youtsey in the presence of two witnesses, and duly acknowledged before a notary public in accordance with the laws of the state of Ohio, applicable to the conveyance of interests in land, in trust for the following uses and purposes, to-wit: First, to pay the expenses of the said trust; second, to pay in full or pro rata each and all of his debts; third, to pay or convey back to the grantor such of the property described in said deed as remained after paying said debts and expenses.

On the 22d day of January, 1897, the said C. M. Nagel, assignee, instituted an action in the Campbell county (Ky.) circuit court against said Youtsey, and the creditors of his estate, for a settlement of the estate of said Youtsey, and on the same day the German National Bank of Covington, Kentucky, instituted an action in the said circuit court of Campbell county, Kentucky, against the said Youtsey, and George P. Wilshire, receiver of the First National Bank of Newport, Kentucky, for the purpose of having declared and adjudged by the said court that the said Youtsey had theretofore made a preferential assignment of all his estate, under and by virtue of the laws of the state of Kentucky; that said actions were subsequently consolidated in the said court, and on February 4th, 1897, the said court by an order, duly and regularly made in said consolidated cases, appointed John T. Hodge as receiver of the estate of said Youtsey, and directed and empowered the said receiver to institute and prosecute in his name as such receiver all actions necessary and required in any and all courts, to recover the interests of the estate of the said Youtsey; that after the consolidation of the said cases, the said Campbell circuit court made a finding that said Youtsey had, prior to his assignment to said Nagel, made an assignment to the First National Bank of Newport, Kentucky, of all his property, and made an order that said assignment to the said First National Bank of Newport operated as and was an assignment for the benefit of all the creditors of the said Thomas B. Youtsey, and conveyed all of said Youtsey's property to the said First National Bank of Newport, Kentucky, in trust of the benefit for the creditors of said Youtsey.

It is claimed on behalf of C. M. Nagel, the assignee nominated in the deed of assignment, executed on January 21, 1897, that inasmuch as the said deed was executed in conformity with the requirements of the law of the state of Ohio,

relative to the conveyance of interests in land, that the same operated immediately upon delivery by the said Youtsey to said Nagel, and invested the said Nagel, assignee, with all of Youtsey's interest in certain property situated in Hamilton county, state of Ohio, known as the Hyde Park Syndicate.

It is claimed on behalf of the said German National Bank of Covington, Kentucky, that inasmuch as by decree of the Campbell circuit court, the conveyance by Youtsey to the First National Bank of Newport was a preferential act, under what is known as the Kentucky act of 1856, vid chap., 54. art. 2, sec. 1910 et seq., Barbour and Carroll's Statutes of Kentucky, 1894, and operated as a general assignment of all of said Youtsey's property, for the benefit of all his creditors; that the deed of assignment of January 21, 1897, is null and void, and that by it the said Nagel, assignee, took no title to the said Hyde Park property situated in the state of Ohio.

There is no doubt, and counsel on both sides of this demurrer concur, that an assignment in invitum under the laws of the state of Kentucky can have no extra-territorial effect. The conveyance by Youtsey to the First National Bank of Newport, and the subsequent finding of the Campbell circuit court, based on the Kentucky statute, that such conveyance operated as a general assignment for the benefit of all of Youtsey's creditors, affect only property situated within the territory of the state of Kentucky, and can have no force or effect upon property situated in the state of Ohio.

It was held in the case of William H. Rhawn against James A. Pierce in the 110 Ill., page 350, "that neither the law of another state or country, nor the adjudication of the courts thereof, by which trustees are appointed to take the property and effects of an insolvent debtor, and distribute the proceeds, can have any extra-territorial effect. They are strictly local, and affect nothing more than they can reach. An assignment in invitum by virtue of or under a foreign law does not operate upon a debt or right of action as against a person in this state or suing here."

It was held by the supreme court of the state of New York in Mossellman and Poelart, trustees against Caen, 34 Barb., page 66: "Our courts will not recognize or enforce a right or title acquired under a foreign bankrupt law, or follow foreign bankrupt judicial proceedings."

Also, in the case of Johnson and Miller against Hunt, in the 23 Wend., page 91, the supreme court of New York, speaking per Cowan, J., has said, referring to the case of Abraham v. Plestore: "It seems to me that if I have not mistaken

the point decided in that case it is unnecessary to go further. The amount of the decision, as I understand it, is that an assignment in invitum under the law of one state or nation has no operation in any other, even with respect to its own citizens; that the bankrupt who is subject to the control of the country under whose laws he is proceeded against can, on crossing the territorial line, dispose of the property which he has brought with him; may withhold it entirely from the creditors who are pursuing him in a foreign jurisdiction; and it follows that other creditors coming from the same jurisdiction may either pursue him by attachment, by judgment and execution, or take a voluntary transfer of the property so brought by the debtor in satisfaction."

Also see Story on Conflict of Laws, sec. 428.

I do not find from the allegations of the answer and cross-petition of the German National Bank, that the Campbell circuit court held that that deed of assignment of January 21, 1897, was in itself, as an instrument, null and void; neither do I conceive that such is the law. It may be said that the deed was inoperative and of no effect, because at the time of its execution, under the laws of Kentucky, Youtsey had no property in Kentucky to convey, it already having been disposed of by the preferential conveyance to the First National Bank of Newport. Adopting this view, it only avoids the deed of assignment pro tanto as an assignment of Youtsey's Kentucky property. This would leave the conveyance valid in all other respects, and especially as a conveyance of the interest in land in the state of Ohio, if properly executed as such conveyance.

It is not clear, however, that the force and effect of the Kentucky statute of 1856, and the decree of the court founded upon it, entirely divested the assignee of even Kentucky property, because section 84, chapter 7, Barbour and Carroll's Kentucky statutes provides: "That if an assignor, before making the deed, shall have made a preferential or fraudulent transfer, conveyance or gift of any of his property, or the fraudulent purchase of any property in the name of another, the property so fraudulently transferred, conveyed or purchased shall vest in the assignee, and it shall be his duty, etc., etc."

I am satisfied that the deed of assignment of January 21, 1897, leaving out of consideration the act of 1856 and the decree of the court, was a good and valid conveyance of the Ohio property; and I find nothing in the allegations of the answer and cross-petition of the German National Bank of Covington, or in the case, to lead me to think that this conveyance is avoided as to anything more than the Kentucky property.

The case of Drake against Ellman, in the 80 Kentucky, page 438, cited to me by counsel for the German National Bank, seems to me to support this view: "The assignment made subsequent to the act of insolvency. by reason of the mortgage, passed nothing, as the debtor's entire estate had already gone by operation of law to his creditors."

It is plain that the court put the inoperation of the deed on the ground that the thing, upon which it was to operate, had already been disposed of, and I infer, if anything was left, upon which said deed could operate, as to that it would have force and effect.

The second contention of counsel for the German National Bank is, that the deed of assignment can not operate as a common law conveyance, because it is executed as a deed of assignment for the benefit of creditors, and there can be no common law assignment for the benefit of creditors in Ohio, the manner being provided for by statute.

Section 6335 provides: "When any person, partnership, association or corporation shall make an assignment to a trustee of any property, rights or credits, in trust for the benefit of creditors, it shall be the duty of the assignee to appear before the probate judge of the county in which the assignor resided at the time of executing said assignment, producing the original assignment or a copy thereof, cause the same to be filed with the probate court .... ; any such assignment shall take effect only from the time of the delivery to the probate judge .... ; and it may be delivered by the assignor to the probate judge either before or after its delivery to the assignee."

It is manifest that this section provides only for assignments made by residents of the state of Ohio. It would be impossible to apply this section to a deed of assignment executed by Youtsey, who resided in no county in the state of Ohio, but resided in the state of Kentucky, and executed the deed of assignment there. If this provision is not applicable, then the deed of assignment by Youtsey must be subject to the general law as to conveyances of interests in land. It is admitted, as to technical form, the Youtsey deed of assignment conforms to the requirements of the Ohio law with reference to the conveyance of interests in land.

It was held by our supreme court in Sortwell against Jewett et al., opinion of the court, per Lane, C. J., in the 9th Ohio, page 182: "That neither the expediency nor the justice of this discrimination are admitted, especially as between citizens of the United States. The natural right of the owner of property to dispose of it at his pleasure depends on

no localities, and is subject to no restriction except that of conformity with the law of the states. A compliance with these forms should avail equally to a stranger as to the citizen, for the law which confers the authority to hold, should not impair the capacity to enjoy, and the distinction seems not only invidious, but too much in the spirit of meeting out justice in different measures, and inconsistent with the rights secured by the constitution. Such doctrines are plainly adopted by those to whom we are wont to look either for precedent or authority."

Our supreme court in the case of Rodgers and Hatton against Allen, in the 3 Ohio, page 488, said: "In order to give effect to such an assignment where lands in a different state are included, the insolvent should be held to make a formal deed of conveyance to trustees. If this is not done, no title passes."

In the case at bar this was done, and title passed.

In the case of McCollough against Roderick, 2 Ohio, page 235, it was held that title to real property in Ohio must be transferred in pursuance of our own laws.

It is urged by counsel for the German National Bank that the effect of this ruling is to discriminate against citizens of our own state in favor of the citizens of foreign states, and give to a deed of assignment execuetd in a foreign state effect on delivery, and even earlier than such deed would have if executed in the state of Ohio. If that is the result it flows from legislative enactment, and can not be avoided·

In the case at bar, however, the result is consister⁴, as it will not do for the cross-petitioners to say that Nagel shall not take by the deed of assignment because executed in the state of Kentucky, but that their attachments should hold, and that they have priority, because Youtsey and they, the cross-petitioners themselves, are residents of the state of Kentucky.

Judge Seymoure D. Thomas, in the case of the First National Bank against Hughes, in the 10 Mo. Appeal Reports, page 23, said: "But it must be remembered that this question is not a question of comity or of convenience, nor can there be brought to its solution any measure of judicial discretion. It is a naked question of right. It depends for its solution upon the principle that jus disponendi is essential to the very idea of property. It concerns the right of every person, whether a citizen of this state or another state, owning property in this state, freely to dispose of that property for a just and lawful purpose; and when such property is owned by an insolvent debtor, there can be no more just or lawful purpose than the dispos-

ition of it for the equal benefit of his creditors."

I am informed that the deed of assignment executed by Youtsey to Nagel was, within a reasonable time, brought into this state, and recorded in the recorder's office of Hamilton county, in accordance with the provision of the Ohio statute, for the recording of conveyances of interest in land. I do not know the date of such record, but counsel's brief states that it was after the levy of the attachment by the German National Bank. This point, however, is not material, as the cross-petitioner is an attaching creditor, and not a bona fide purchaser.

Rev. Stat., 4134, provides: "All other deeds and instruments in writing for the conveyance or incumbrance of any lands, tenements or hereditaments executed agreeably to the provisions of this chapter shall be recorded in the office of the recorder of the county in which the premises are situated, and until so recorded or filed for record, the same shall be deemed fraudulent so far as relates to subsequent bona fide purchaser, having at the time of the purchase no knowledge of the existence of such former deed or instrument."

It is only as to a subsequent bona fide purchaser, having at the time of purchase no knowledge of the existnce of such former deed or instrument, that the want of record makes such a deed fraudulent.

"By the execution of the deed according to the forms of law, the title of the grantor to the lands becomes vested in the grantee whether the deed is recorded or not, and is good as against all the world except subsequent purchasers without notice." 17 Ohio, page 226.

The demurrer will be sustained.

This cause coming on for final hearing, I am asked to give the following paper force and effect as giving to James C. Wright a first and best interest in Thomas B. Youtsey's share in the Hyde Park Syndicate property, as against the other claims asserted herein by the other parties to this suit.

"January 16th, 1895.

"James C. Wright has in the First National Bank several notes payable to my order. All these notes were made by him for the purpose of enabling me to raise money with which to pay my interest in the Hyde Park Syndicate in Hamilton county, Ohio, and I have used said notes for that purpose. My interest in said syndicate is liable for the payment of said notes. The interest of said James C. Wright is, that for the execuion of said notes by him and all previous and subsequent similar ones, he is to have from the profits of said venture six thousand dollars. This does not include money loaned by him to me·

in said venture for which he holds my note.

"(Signed) T. B. Youtsey."

This paper was not witnessed, not acknowledged, nor recorded. Waiving these objections for the present, and examining the paper for itself, I do not understand it by its own terms to purport to create any specific lien on Youtsey's interest in said syndicate. Further, it recites a state of facts which would make a resulting trust impossible.

"My interest in said syndicate is liable for the payment of said notes." This is the only statement in the paper which could be construed as tending toward the creation of a lien. It merely states a fact which was true without the paper, Youtsey's interest was liable for the payment of these notes, as it was for all of Youtsey's debts.

The particular interest of James C. Wright is further set out to be to the extent of six thousand dollars in the profits.

This paper looks to me like a mere statement made by Youtsey and Wright, appreciating the uncertainties of life, of their arrangement about this venture.

If this paper had been executed and recorded in accordance with all the requirements of law, I find nothing in it giving to James C. Wright a lien prior and preferable to the liens of the other parties to this suit. If this paper had been intended as an assignment, a mortgage or to create a specific lien, it was neither executed nor recorded in accordance with the provisions of Revised Statutes, 4106 and 4133, and hence is invalid as against subsequent valid liens. Stansell v. Roberts, 13 Ohio, 149-157; Mayham v. Coombs, 14 Ohio, 29; Holliday v. Franklin Bank, 16 Ohio, 534; White v. Denman, 1 Ohio St., 111; Fosdick v. Barr, 3 Ohio St, 471; Bloom v. Noggle, 4 Ohio St., 46; Erwin v. Shuey, 8 Ohio St., 510; Bercaw v. Cockerill, 20 Ohio St., 163; Van Therniley v. Peters, 26 Ohio St., 491; Building Assn. v. Clark, 43 Ohio St., 427.

But it is contended by James C. Wright's counsel that Mr. Youtsey's interest in the Hyde Park Syndicate is but an equitable interest and not a legal estate, and as such not subject to the provisions of Rev. Stat., 4106 and 4133; that the asserted liens can not rise higher in their nature than the estate upon which they are asserted, and hence are all equitable liens and must relatively be determined according to rules of equity, and not of law; that Mr. Wright's claim is both the older and more meritorious.

As between equities the older will prevail, unless the junior be more meritorious. Hume v. Dixon, 37 Ohio St., 66. The language of Rev. Stat., 4106, is broader than the limitations counsel would seek to place upon it:

"A deed, mortgage or lease of any estate or interest in real property".

I am of opinion that for the purpose of conveying and encumbering, Mr. Youtsey's interest in the Hyde Park property must be considered as real estate. Miller et al. v. Proctor et al., 20 Ohio St., 448; Piatt v. Oliver, 3 McLean, 29; Davis v. Christian, 15 Grattan, 11, 36 and 37; Tarbell v. West, 86 New York, 280 and 287.

But conceding for a moment this proposition of Mr. Wright's counsel, I do not find that this claim is either older or more meritorious than the claims of others herein.

The fact that Mr. Wright loaned his credit to Mr. Youtsey to raise money for Mr. Youtsey to buy his interest in this syndicate does not establish a lien or give Mr. Wright any claim against this specific property.

The fact is that now Mr. Wright has not paid a dollar on these notes. I am of opinion that Mr. Wright did not acquire any claim or lien against this specific property before he recovered his judgment in this county and state. As to merit Mr. Wright's claim certainly is not to be preferred. He has not yet paid the money, excepting a small part, and he loaned his credit evidently recognizing an extraordinary risk for which he was to receive a large recompense.

I can not give Mr. Wright's claim the place demanded for it by counsel, but must postpone it with the others to the claims of the Franklin Bank and Nagel, assignee.

Having so found, a determination as to the claims of G. R. Harms and The German National Bank is unnecessary. I find from the evidence, however, that the check of Henry Burkhold for $6,906.25 was received by G. R. Harms as a payment on his judgment in that amount.

J. D. Brannan for the Franklin Bank

Gustavus H. Wald and L. J. Crawford, for C. M. Nagel, assignee.

Stephens & Lincoln and James C. Wright, for Mr. Wright.

Simrall & Galvin, for German National Bank.

C. L. Raison, Jr., for G. R. Harms.

---

(Superior Court of Cincinnati.)